**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)**

| | | |
|---|---|---|
| **BEVELYN CEPHAS-QUIDAS**, | * | |
| 1418 Stone Boundary Road | | |
| Cambridge, MD 21613 | * | |
| | | |
| *Plaintiff*, | * | |
| | | |
| v. | * | |
| | | |
| **STATE OF MARYLAND,** | * | **CASE NO.**_____ |
| Department of Health & Mental Hygiene | | |
| Eastern Shore Hospital Center | * | |
| 5262 Woods Road | | |
| Cambridge, MD 21613 | * | |
| | | |
| **Serve:** Brian E. Frosh, Esquire | * | |
| Attorney General of Maryland | | |
| 200 St. Paul Place | * | |
| Baltimore, MD 21202 | | |
| | * | |
| *Defendant*. | | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**COMPLAINT**

Plaintiff Bevelyn Cephas-Quidas ("Ms. Cephas-Quidas") through counsel brings this Complaint against her employer, the State of Maryland, for violations of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA"). Ms. Cephas-Quidas seeks compensatory and liquidated damages and attorney's fees and costs.

**JURISDICTION AND VENUE**

1.      This is a civil action arising under the laws of the United States, specifically, the FLSA.  This Court has jurisdiction pursuant to 28 U.S.C. §1331.

1

2.      The acts and omissions giving rise to Plaintiff's claim occurred in Maryland, and there is no other district in which this action may be brought.  Venue lies in this Court pursuant to 28 U.S.C. §1391(b).

## PARTIES

1.      Ms. Cephas-Quidas is a resident of Dorchester County, Maryland.  She is employed by the State of Maryland and works at the Eastern Shore Hospital Center ("ESHC") in Cambridge, Maryland.

2.      The State owns and operates the ESHC, which is 80-bed psychiatric facility.  It is an "employer" within the meaning of the FLSA.

## FACTS COMMON TO ALL COUNNTS

3.      Ms. Cephas-Quidas has been employed by the State at ESHC as a Direct Care Assistant II ("DCA") since 2010.

4.      As a DCA, Ms. Cephas-Quidas supports and implements patient care by providing ongoing assessments of the medical and mental health status of patients; monitors and charts vital signs; and collaborates with staff to obtain services for patients.

5.      Ms. Cephas-Quidas is a hardworking and dependable employee, who has consistently received good evaluations. Consequently, when the registered nurse manager, who had been charged with scheduling the nursing staff, retired, ESHC asked Ms. Cephas-Quidas if she would be willing to assume the additional duties of scheduling all nursing staff.

6.      Ms. Cephas-Quidas agreed, but she did not receive an increase in pay despite the additional duties.  In fact, Ms. Cephas-Quidas earned less because she went from working night shift, where she earned a salary differential, to day shift.

2

7.      As of February 1, 2016, Ms. Cephas-Quidas was charged with the following additional duties: scheduling ESHC's nursing staff and patient's medical services and treatment; maintaining employee call-outs and finding replacement staff; maintaining a tracking list of all vacations planned or taken by nursing staff; updating daily attendance records; and keeping time records.

8.      Given her administrative duties, Ms. Cephas-Quidas worked in the office Monday through Friday from 7:30 a.m. to at least 4:30 p.m.

9.      However, if help was needed on the floor during the day, Ms. Cephas-Quidas would be asked to leave the office to assist.  When ESHC was short-staffed, Ms. Cephas-Quidas also worked at night or on weekends providing direct patient care in addition to her daily office duties.

10.     After six months of performing the additional duties, Ms. Cephas-Quidas requested a salary increase.

11.     ESHC's then-Chief Executive Officer agreed to grant Ms. Cephas-Quidas "acting capacity pay" of an Office Secretary III, which was a flat rate of $153.70 per pay period.

12.     Pursuant to State policy, "acting capacity pay" should be for no more than six months.

13.     Consequently, by Memorandum dated May 22, 2017, ESHC notified Ms. Cephas-Quidas she had been approved for the reclassification of her position from a DCA II to Office Secretary III effective February 15, 2017 at a pay grade 10, step 4.  The salary adjustment was retroactive to the effective date of her promotion with the step increment retroactive to July 2016.

14.     Following the reclassification, Ms. Cephas-Quidas continued to provide direct patient care and was considered a "dual employee."  She held a merit full-time position as Office Secretary III and was considered a contractual DCA.

3

15.     Since the reclassification, Ms. Cephas-Quidas has worked at least 40 hours a week in the office performing administrative tasks.  If she provides patient care at night or on weekends, (as is often the case), then Ms. Cephas-Quidas works more than 40 hours that week.

16.     Neither the position as Office Secretary III, nor DCA is exempt from the overtime requirement.

17.     Under the FLSA, Ms. Cephas-Quidas is entitled to overtime compensation for each hour she works in excess of 40 hours in any work week regardless of whether she works as Office Secretary III or a DCA.

18.     Until December 2018, ESHC paid Ms. Cephas-Quidas time and one-half for all hours worked over 40 hours regardless of whether she worked as Office Secretary III or a DCA.

19.     Following changes to the HR Department, however, ESHC changed the way it paid overtime to Ms. Cephas-Quidas, beginning December 2018.  The total hours Ms. Cephas-Quidas worked ó whether as Office Secretary III or DCA ó were no longer combined for the purposes of determining any overtime compensation.  Ms. Cephas-Quidas earned overtime only if she worked more than 40 hours a week as Office Secretary III or more than 40 hours in a week as a DCA.

20.     Since December 2018, despite Ms. Cephas-Quidas frequently and regularly working for ESHC as a DCA and, consequently, working in excess of 40 hours in a week, ESHC has failed to pay Ms. Cephas-Quidas in full and on time the overtime premium for her overtime work.

21.     Ms. Cephas-Quidas regularly and frequently works as a DCA in addition to her Office Secretary III duties because ESHC is understaffed, particularly since the onset of the COVID-19 pandemic.  In 2019, Ms. Cephas-Quidas worked 466.75 hours over her 40-hour work week as Office Secretary III and, in 2020, she worked 1,084 hours over her 40-hour work week as

Office Secretary III.  Clearly, Ms. Cephas-Quidas' assignments as a DCA are not occasional or sporadic, when, she, on average, is working 11 to 20 hours a week as a DCA in addition to her duties as Office Secretary III.

22.     As Office Secretary III, Ms. Cephas-Quidas schedules the DCAs to work.  She first schedules the full-time DCAs holding a merit position with the State; she then schedules the part-time DCAs holding a merit position with the State.  The contractual DCAs or "float pool" are scheduled for any remaining shifts.  Out of the "float pool," Ms. Cephas-Quidas schedules herself last.

23.     If Ms. Cephas-Quidas did not schedule herself to work as a DCA, the nursing unit would be understaffed because there is no one else able or available to work.

24.     No one at ESHC has complained that Ms. Cephas-Quidas is overscheduling herself. Ms. Cephas-Quidas' schedule and her time card are approved by Kim Butler, the Director of Nursing.

25.     Likewise, no one else at ESHC wants to perform the scheduling and timekeeping duties of Office Secretary III.

26.     On multiple occasions since December 2018, Ms. Cephas-Quidas has asked ESHC's HR Department why it stopped combining her hours worked as Office Secretary III and DCA for the purposes of determining any overtime compensation. ESHC has never supplied Ms. Cephas-Quidas with an answer, response, or explanation.

27.     Because ESHC has never claimed an exemption to the overtime requirement or explained to Ms. Cephas-Quidas why it changed the way it paid overtime, on August 6, 2020, Ms. Cephas-Quidas, through her union representative, filed a grievance pursuant to § 12-203 of the State Personnel and Pension ("SPP") Article of the Maryland Annotated Code.  In her grievance,

Ms. Cephas-Quidas also challenged the fact the State had not paid her in full for her work as a DCA and was paying her one or more pay periods late.

28.     A meeting was scheduled for April 14, 2020 with Ms. Cephas-Quidas; Lisa McKinney, Ms. Cephas-Quidas' union representative; Tiffany Clark, ESHC's HR Director; and Ms. Butler.

29.     Ms. Clark cancelled that meeting because, according to Ms. Clark, Ms. Cephas-Quidas' grievance, which included her overtime claim, was for her contractual DCA position and, according to SPP § 12-102(b)(3), a contractual employee cannot file a grievance.

30.     Consequently, on August 18, 2020, Ms. Cephas-Quidas filed a complaint with Ms. Butler complaining Ms. Clark and Theresa Bronson, ESHC' Human Resources Associate, were ignoring her complaints of unpaid overtime and wages.

31.     Ms. Butler forwarded Ms. Cephas-Quidas' complaint to Kim Jones, the Department of Health and Mental Hygiene's Eastern Regional HR Director.

32.     On September 1, 2020, Ms. Cephas-Quidas met Ms. Jones and James Karnes, ESHC's Chief Operating Officer, about her complaint.

33.     Immediately after that meeting, Ms. Clark demanded Ms. Cephas-Quidas sign a repayment and payroll deduction authorization agreement acknowledging Ms. Cephas-Quidas had been overpaid $10,912.70 as a result of a salary overpayment from August 24, 2016 through November 15, 2019.

34.     The salary overpayment was because Ms. Cephas-Quidas had continued to receive "acting capacity pay" following her reclassification.

35.     Ms. Cephas-Quidas repeatedly informed ESHC and the officials at the State Department of Budget and Management ("DBM") that she was receiving "acting capacity pay" in error, but no one corrected that error.

36.     The error was eventually corrected more than a year later.

37.     Ms. Cephas-Quidas was notified of the overpayment in February 2020. At that time, Calvin Garrison, who was then-ESHC's HR Specialist, told Ms. Cephas-Quidas DBM was not going to pursue collecting the overpayment because it was an administrative error on its part.

38.     More than six months later (and after Ms. Cephas-Quidas complained) Ms. Clark began deducting $100 from Ms. Cephas-Quidas' pay each pay period, even though DBM said it was not going to pursue the alleged overpayment and even though Ms. Cephas-Quidas refused to sign a new payroll deduction authorization.

39.     The State attempted to sneak the payroll deduction by Ms. Cephas-Quidas.  Ms. Cephas-Quidas' regular pay as Office Secretary III went from $1,420.26 to $1,320.28 a pay period. The State reduced Ms. Cephas-Quidas' pay rather than paying her all wages owed and showing a payroll deduction of $100.

40.     Even though the State maintains Ms. Cephas-Quidas' employment as Office Secretary III and DCA are separate and distinct, it has deducted $100 from Ms. Cephas-Quidas' wages earned as a DCA (in addition to deducting her pay as Office Secretary III by $100) despite the fact the alleged overpayment was for pay received as Office Secretary III.

41.     Ms. Cephas-Quidas filed another complaint on October 19, 2020 after the State began illegally deducting her pay in retaliation for her complaining about her unpaid overtime and delays in receiving her wages as a DCA.

42.     Dr. Forrest Daniels, ESHC's Executive Director, denied her complaint without taking any action and told Ms. Cephas-Quidas her complaint was a "distraction" to ESHC.

43.     Meanwhile, Ms. Jones has threatened Ms. Cephas-Quidas that, if she quits, the State will withhold her last paycheck and send the balance of the alleged overpayment into collections.

44.     Prior to filing suit, Ms. Cephas-Quidas, through counsel, wrote the State seeking payment of all wages due and owing to Ms. Cephas-Quidas.  The State never responded.

<u>**COUNT I**</u>
<u>**FLSA – UNPAID OVERTIME WAGES**</u>

45.     Ms. Cephas-Quidas repeats and incorporates by reference the allegations set forth above.

46.     Since December 2018, ESHC has and continues to have a policy and practice of not paying compensable overtime wages to Ms. Cephas-Quidas when she works more than 40 hours in a workweek.

47.     Since December 2018, the ESHC has withheld Ms. Cephas-Quidas' overtime premium for her overtime work, without a good-faith basis to do so and without a legitimate dispute regarding the validity of Ms. Cephas-Quidas' entitlement to those wages.

48.     Ms. Cephas-Quidas conservatively estimates she is owed more than $45,000 in overtime wages.

**WHEREFORE,** Ms. Cephas-Quidas respectfully requests this Honorable Court grant the following relief:

A.     Grant judgment against the State and in favor of the Ms. Cephas-Quidas in the amount of her unpaid overtime wages plus double damages;

B.      Award Ms. Cephas-Quidas pre- and post-judgement interest on all amounts owed as allowed by law;

C.      Award Ms. Cephas-Quidas costs and reasonable attorney's fees incurred in this action; and

D.      Grant Ms. Cephas-Quidas such other and further relief as the nature of her cause may warrant.

**COUNT II**
**FLSA - RETAILATION**

49.     Ms. Cephas-Quidas repeats and incorporates by reference the allegations set forth above in paragraphs 1 through 44.

50.     The State has discriminated and retaliated against Ms. Cephas-Quidas because she has repeatedly complained she is due unpaid overtime.

51.     The State's harassment and mistreatment has caused Ms. Cephas-Quidas to suffer emotional distress accompanied by physical conditions.

52.     The State, acting through its officials, has acted purposefully and with a reckless indifference to Ms. Cephas-Quidas' statutorily protected rights.

**WHEREFORE,** Ms. Cephas-Quidas respectfully requests this Honorable Court grant the following relief:

A.      Grant judgment against the State and in favor of the Ms. Cephas-Quidas in the amount of the wages improperly deducted from Ms. Cephas-Quidas' pay plus double damages;

B.      Award non-pecuniary damages, including, but not limited to, damages for mental and emotional distress, pain and suffering, and physical pain and suffering in favor of Ms. Cephas-Quidas and against the State;

C.      Award Ms. Cephas-Quidas pre- and post-judgement interest on all amounts owed as allowed by law;

D.      Award Ms. Cephas-Quidas costs and reasonable attorney's fees incurred in this action; and

E.      Grant Ms. Cephas-Quidas such other and further relief as the nature of her cause may warrant.

_____/s/_____

ROBIN R. COCKEY, Federal Bar No.02657
ASHLEY A. BOSCHÉ, Federal Bar No. 28800
Cockey, Brennan & Maloney, PC
313 Lemmon Hill Lane
Salisbury, MD 21801
410-546-1750
Fax:  410-546-1811
rrcesq@cbmlawfirm.com
bosche@cbmlawfirm.com
*Attorneys for Plaintiff*
